J-S34036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LUCIEN JOSEPH GENTILE | |
| Appellant | No. 1489 MDA 2014 |

Appeal from the Judgment of Sentence Entered March 11, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0003101-2013

BEFORE:  BOWES, OTT, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 21, 2015**

Appellant, Lucien Joseph Gentile, appeals from the trial court's March 11, 2014 judgment of sentence imposing six months of probation for DUI, general impairment.[1]  We affirm.

The trial court recited the relevant facts in its Pa.R.A.P. 1925(a) opinion:

> The testimony revealed the following course of events during the late afternoon hours of January 31, 2013:  Roger White testified that he, his wife, and daughter were traveling on Routes 11/15 and 322, and noticed the driver of a white Audi driving very erratically.  The vehicle forced Mr. White to apply his brakes suddenly, as the Audi pulled directly in front of him.  Mr. White's daughter called 911, and Mr. White described the car, and gave the operator the license plate number.

---

[1]  75 Pa.C.S.A. § 3802(a)(1).

A second witness, Danielle Shoppe, testified that she and a friend were driving back from work and noticed a white Audi driving 'all over the road' and 'swerving everywhere.' Ms. Shoppe placed a call to 911, and decided to continue to follow the Audi, as the car was 'swerving off the road onto people's yards.' She opined the 'he was either going to kill himself or somebody else.' The Audi driver pulled into a neighborhood, got out of his car, and started walking to Ms. Shoppe's vehicle. Ms. Shoppe testified that she could tell he was drunk. Ms. Shoppe was still on the phone with the 911 dispatcher, who told her to stay in the car. The driver of the Audi got back into his car, drove to his house, and parked his car in the garage. Ms. Shoppe followed and waited about seven to eight minutes for the police to arrive, to make sure they had the right house. Ms. Shoppe identified [Appellant] at trial as the driver of the Audi.

Pennsylvania State Police Trooper Brian Wolfe testified that on January 31st of 2013, he received reports of traffic violations from multiple callers regarding the white Audi, Mr. White and Ms. Shoppe being two of the callers. Trooper Wolfe testified that the information received from PennDOT after the license plate number was given to dispatch, revealed the Audi was registered to [Appellant]. When Trooper Wolfe arrived at [Appellant's] residence, he initially spoke with [Appellant's] wife, Marcy [sic] Gentile.[2] [Appellant] then came to the front door, and the officer asked to speak with him in the garage. Upon speaking with [Appellant], Trooper Wolfe detected a strong odor or alcohol coming from his breath. He also observed [Appellant's] slurred speech, bloodshot, glassy eyes, and noted that [Appellant] had difficulty standing and was staggering. Trooper Wolfe asked [Appellant] to perform three different field sobriety tests and, based on such tests, the trooper determined that [Appellant] was 'extremely impaired.' He was placed under arrest and transported to Osteopathic Hospital for a legal blood test, which later revealed a BAC of .238. On the return trip from the hospital, Trooper Wolfe read [Appellant] his ***Miranda***[3] rights, and asked him a few questions. [Appellant] told him that he was

_____

[2] According to the transcript, Appellant's wife is named Marsha Gentile.

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

an alcoholic, and had consumed a pint of Southern Comfort from Williamsport to Harrisburg while in his vehicle.

Contrary to Trooper Wolfe's testimony, [Appellant] averred that during his trip home from work, from Williamsport to Harrisburg, on the afternoon in question, he had stopped drinking for two days and was having withdrawal symptoms (shakes and sweats). While traveling in his car at that time, [Appellant] testified he was reading emails from his phone and driving with his knee holding the steering wheel. He also testified that as soon as he got home, he retrieved a hidden stash of Southern Comfort and drank it as quickly as he could because he was shaking so badly. He claims to have finished about three quarters of the pint-sized bottle. When asked why he told the officer he had consumed the Southern Comfort while driving, [Appellant] said that he didn't recall much, because his BAC was obviously high. [Appellant's] wife, Marsha Gentile, testified that she observed [Appellant] drinking from the Southern Comfort bottle.

Trial Court Opinion, 11/3/14, at 2-4 (record citation omitted).

Appellant proceeded to a February 27, 2014 bench trial, at the conclusion of which the trial court found him guilty of DUI—general impairment, disregarding a traffic lane (75 Pa.C.S.A. § 3309) and careless driving (75 Pa.C.S.A. § 3714). The trial court found Appellant not guilty of DUI—highest rate of alcohol (75 Pa.C.S.A. § 3802(c)). The trial court imposed sentence on March 11, 2014. The trial court denied Appellant's post-sentence motions, and this timely appeal followed. Appellant challenges the sufficiency and weight of the evidence.

We review Appellant's sufficiency of the evidence challenge according to the following:

Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence mandates that we

- 3 -

assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact finder to have found every element of the crime beyond a reasonable doubt.

In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Evans*, 901 A.2d 528, 532-33 (Pa. Super. 2006)

(internal citations and quotation marks omitted), *appeal denied*, 909 A.2d

303 (Pa. 2006).

The Motor Vehicle Code defines DUI—general impairment, as follows:

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a).

Appellant argues the Commonwealth failed to produce sufficient

evidence in support of his DUI conviction because the evidence of record is

equally consistent with two competing propositions. "The law in

- 4 -

Pennsylvania is well settled that 'when a party on whom the burden of proof rests, in either a civil or criminal case, offers evidence consistent with two opposing propositions, he proves neither.'" ***Commonwealth v. Crompton***, 682 A.2d 286, 289 (Pa. Super. 1996) (*quoting **Commonwealth v. Woong Knee New***, 47 A.2d 450, 468 (Pa. 1946)).  In ***Crompton***, a police officer testifying at a suppression hearing gave two mutually exclusive accounts of his conduct in executing a search warrant.  ***Id.*** at 288-90.  Each account was consistent with an exception to the knock and announce rule.  ***Id.***  As a result, the Supreme Court concluded the Commonwealth failed to carry its burden of proving either exception to the knock and announce rule.  ***Id.***

Appellant believes the evidence in this case is consistent with two opposing propositions—that he consumed alcohol while driving or that he consumed nearly an entire bottle of Southern Comfort after he arrived at his home but before Trooper Wolfe arrived.  Appellant's Brief at 14.  Appellant misconstrues the holding of ***Crompton*** and similar cases.  This is not a case in which one witness offered two inconsistent accounts of his conduct.  Nor is this a case, such as ***Woong Knee New***, involving a large body of evidence permitting equal inferences of either the defendant's guilt or the guilt of an unknown third party.  ***Woong Knee New***, 47 A.2d at 467-69.  Rather, the Commonwealth produced overwhelming evidence of Appellant's guilt, including Appellant's admission to Trooper Wolfe.  The trial court, sitting as fact finder, credited the prosecution's witnesses and discredited

Appellant's story. Under Appellant's theory of this case, **Crompton** could apply to almost any case where the fact finder must assess the credibility of witnesses whose testimony conflicts. Here, Appellant asks us to disregard our obligation to defer to the fact finder's credibility determinations and draw inferences in favor of the Commonwealth as verdict winner. Several eyewitnesses testified to Appellant's erratic driving. One eyewitness testified that Trooper Wolfe arrived at Appellant's home within eight minutes of Appellant's arrival. Trooper Wolfe testified that Appellant admitted consuming alcohol during his drive, that Appellant was obviously intoxicated, and that he failed field sobriety tests. This evidence is more than sufficient to establish Appellant's violation of § 3802(a) beyond a reasonable doubt. Appellant's first argument fails.

Next, Appellant challenges the weight of the evidence in support of his conviction.[4]

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the

---

[4] Appellant preserved this issue in a timely post-sentence motion in accord with Pa.R.Crim.P. 607.

evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000). A conflict in testimony is not a sufficient basis for a new trial. ***Commonwealth v. Rivera***, 983 A.2d 1211, 1225 (Pa. 2009), *cert. denied*, 560 U.S. 909 (2010).

Appellant relies on his own testimony and that of his wife to argue that he consumed alcohol only after he stopped driving. In essence, Appellant asks us to set aside the trial court's credibility determinations and reweigh the evidence. We decline to do so, as our standard of review forbids such action. We summarized the evidence in support of Appellant's conviction above. Based on that evidence, we discern no abuse of discretion in the trial court's denial of Appellant's motion for a new trial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2015